UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| OSCAR MORALES,<br>        Plaintiff | :<br>:<br>:    CIVIL ACTION NO.|
| v. | :    3:07-cv-1836 (CFD)<br>:<br>: |
| CANCUN CHARLIE'S RESTAURANT,<br>et al.<br>        Defendants | :<br>:<br>: |

**RULING ON MOTION FOR SANCTIONS**

The plaintiff, Oscar Morales ("Morales"), seeks sanctions in the form of a default judgment and attorneys' fees pursuant to Fed. R. Civ. P. 37 for defendants' willful violations of discovery orders. For the reasons that follow, the motion for sanctions is granted, and default judgment is entered in favor of the plaintiff.

**I.    Background**

Morales claims that he worked as a staff member in the kitchen of Cancun Charlie's Restaurant in Milford, Connecticut from June 2004 through August 2006, typically laboring approximately 100 hours each week. He claims, however, that he was not paid the minimum wage or overtime, and that when he stopped working, the restaurant failed to pay him for his final partial week of work. The defendants admit Morales worked at the restaurant on an informal and temporary basis, but dispute the number of hours he claims to have worked. The parties agree that Morales was paid in cash. Morales now brings a five count complaint alleging violations of the Fair Labor Standards Act, the Connecticut Minimum Wage Act, breach of implied contract, breach of express oral contract, and unjust enrichment against the following

defendants: Cancun Charlie's Restaurant; PBAC Enterprises, L.L.C., which owns and operates the restaurant; the restaurant's owners, operators, and managers, Peter Biondi and Christine Henriques Biondi; and William Hoffman, who was a daily manager of the restaurant.  Important to the plaintiff's development of his case is his discovery of the names and contact information of people he worked with in the restaurant.

### A.     Initial Disclosures

On February 22, 2008, the Court entered a scheduling order [Dkt. # 12] requiring the defendants to submit Rule 26(a)(1) initial disclosures by February 27, 2008.  When the defendants failed to submit initial disclosures by the deadline, plaintiff's counsel contacted defendant's counsel by phone and mail in an unsuccessful attempt to attain the initial disclosures.  On May 9, 2008, the plaintiff filed a Motion to Compel Production of Initial Disclosures and Requested Documents [Dkt. # 15], to which the defendants did not respond.  Magistrate Judge Smith granted the plaintiff's Motion to Compel on October 3, 2008 [Dkt. # 21].  Despite Magistrate Judge Smith's Order and subsequent requests by this Court, the defendants never provided initial disclosures.

### B.     Requests for Production

Plaintiff's counsel served Requests for Production on the defendants on March 14, 2008.  The defendants neither requested an extension of time to respond nor filed an objection.  After several attempts at communication with defendants' counsel to request the documents, the plaintiff filed a Motion to Compel Production of Initial Disclosures and Requested Documents [Dkt. # 15].  Magistrate Judge Smith granted the plaintiff's Motion to Compel on October 3, 2008 [Dkt. # 21].  As of November 20, 2008, however, the defendants still had not produced any

of the documents requested.  Moreover, on December 4, 2008, two months after Judge Smith's Order compelling production, the defendant Peter Biondi testified at his deposition that, despite the possibility that certain documents requested might exist, he had "not looked for them," because he had "given no merit to this case whatsoever."  Peter Biondi Dep. 101:17-18.

On January 21, 2009, at a hearing on a different issue in the case, this Court instructed the defendants to respond to the Requests for Production within one week.  On January 27, 2009, defendants provided some responses to the plaintiff's production request.  Nonetheless, the plaintiff contended that the responses were incomplete.  Defendant followed with further responses on March 2, 2009 and March 12, 2009.  These responses were also insufficient.  Specifically, the productions did not include the names and contact information of individuals that a manager of the restaurant identified in her deposition as having worked with Morales in the restaurant.  The defendants also did not provide statements under oath explaining whether or not they attempted to attain such information or why such information was unavailable.  This information is important to plaintiff's attempt to establish the defendant's employment practices and the hours the plaintiff typically worked.

The defendants' tardy productions also lacked requested W-4 Forms that were processed by either the defendants or by ADP, their payroll processing servicer.  Plaintiff's counsel attested that an ADP representative informed her that ADP maintains copies of all W-4 Forms for seven years.  The plaintiff requested the W-4 Forms from the defendants in further attempt to identify and locate individuals who would have knowledge of Morale's work at Cancun Charlie's.  Although the defendants contend that they have since phoned ADP and received contrary information regarding the availability of Cancun Charlie's W-4 Forms, the defendants have again

not attested to their efforts under oath.

### C. Interrogatories to Defendant Peter Biondi

On April 4, 2008, the plaintiff served interrogatories on defendant Peter Biondi by certified U.S. mail.  On May 1, 2008, Peter Biondi served answers to the interrogatories that plaintiff claimed were incomplete and evasive.  For example, in response to interrogatory number fourteen to "[i]dentify all persons having knowledge of any facts of this case, including, but not limited to, the allegations contained in the complaint and the Defendant employer's answer to the complaint, setting forth in detail for each person: a. the name and present (or last known) address of the person; and b. the extent and nature of that person's knowledge," Biondi responded "Aja Smiley" and "Burke, address Cancun Charlie's, Milford, CT."  No one by the name of "Burke" has ever been identified and this answer was never clarified.  At Biondi's December 2008 deposition, however, he named several other people who might have knowledge of the facts of the case, clearly demonstrating that his answer to the interrogatory was incomplete.  In interrogatory number twenty-three, the plaintiff asked Biondi to "[i]dentify each person who supervised Oscar Morales since June 1, 2004."  Biondi responded: "Peter Biondi, Aja Smiley, various bartenders, various waiters, various matra de," but did not provide any names or contact information for any of the bartenders, waiters, or matra de.  On May 9, 2008, plaintiff's counsel sent defendants' counsel a letter detailing the alleged inadequacies and requesting a revision.  When none was forthcoming, the plaintiff filed a Motion to Compel Further Responses to Interrogatories on June 30, 2008 [Dkt. # 17].  On October 2, 2008, Magistrate Judge Smith granted plaintiff's motion [Dkt. # 22].  Peter Biondi still did not revise his answers to the interrogatories.

On December 5, 2008, only after the instant motion for sanctions was filed, Peter Biondi finally produced revised responses to interrogatories. However, these responses also failed to identify the names and addresses of any individuals having knowledge of facts of the case, as the plaintiff requested, including chefs, cooks, busboys, dishwashers, or waitstaff. In specific response to interrogatory number fourteen, Biondi answered "Peter Biondi, Aja Smiley and Ivonne Morris," despite the fact that Aja Smiley began working at Cancun Charlie's after Morales stopped working. This is also despite the fact that at his deposition the day prior, Peter Biondi named a number of Morale's co-workers and supervisors, including "Leo," as someone who might know the hours plaintiff worked; "Rojelio," "Andre," "Rubin," "Daniel Tabia," and "Henry" as individuals who worked at the restaurant when Morales worked there; and "Ambilio," "George Lopez," and "John Fernandez" as chefs who worked at Cancun Charlie's while Morales worked there. Biondi Dep. 53:2-24, 79:11-21, 90:13-20. Additionally, in response to interrogatory number 23, Biondi provided an answer inconsistent with his original response, stating "Aja Smiley, Ivonne Morris" as people who supervised Morales.

**D.     Depositions**

On July 28, 2008, the defendants voluntarily produced Ms. Aja Smiley, a manager at Cancun Charlie's Restaurant, for a deposition. Ms. Smiley was one of only two persons Peter Biondi named in his responses to interrogatories as having knowledge of any facts of the case. The plaintiff claims, however, that the deposition revealed that Ms. Smiley began working at Cancun Charlie's restaurant after Morales had stopped working there, that Smiley did not know Morales, and that her knowledge in general was limited to the management of the "front" of the restaurant, not the "back" of the restaurant where the kitchen workers such as Morales worked.

During her deposition, Ms. Smiley identified Ivonne Morris as another manager at Cancun Charlie's, who Peter Biondi had not identified in his original answers to plaintiff's interrogatories.

On October 16, 2008, the defendants voluntarily produced Ms. Morris for a deposition. While Ms. Morris worked at the restaurant at the same time as Morales, her knowledge was again primarily limited to the operations of the front of the restaurant rather than the kitchen. See Morris Dep. 12.

On October 28, 2008, plaintiff's counsel contacted defendants' counsel to attempt to schedule depositions of defendant Christine Biondi, defendant Peter Biondi, and a non-party witness Alejandro Rivera, the chef at Cancun Charlie's Restaurant. On October 30, 2008, plaintiff's counsel sent by certified U.S. mail a Notice of Deposition of defendant Christine Biondi for November 12, 2008 and defendant Peter Biondi for November 13, 2008. Plaintiff's counsel also sent a Notice of Subpoena for the deposition of Alejandro Rivera for November 11, 2008. On November 5, 2008, a marshal served upon Alejandro Rivera a subpoena commanding his presence at a deposition on November 11, 2008 at 9:00 am. On November 7, 2008, defendants' counsel filed a Motion to Quash the Deposition Subpoena of Alejandro Rivera and a Motion to Quash the Deposition Subpoena of Christine Henriques Biondi [Dkt. # 26 & 27]. On November 10, 2008, plaintiff's counsel was informed that defendant's counsel did not plan to attend the deposition of Alejandro Rivera and that Rivera would not attend either. On November 11, 2008, plaintiff's counsel filed memoranda of law in opposition to defendants' Motions to Quash [Dkt. # 28 & 29]. On November 11, 2008, although the Court had not ruled on the Motion to Quash Deposition Subpoena of Alejandro Rivera, neither Mr. Rivera nor defendants' counsel appeared at Rivera's scheduled deposition. Additionally, on November 12, 2008,

although the Court had not ruled on the Motion to Quash the deposition of Christine Biondi, Ms. Biondi did not appear at her noticed deposition. Defendants' counsel told plaintiff's counsel that the only circumstances under which he would produce Christine Biondi for a deposition would be if the deposition was held in Ms. Biondi's home, and if plaintiff employed a pediatric registered nurse to care for Ms. Biondi's children during the deposition. Defendants' counsel also stated that he would not allow Alejandro Rivera to be deposed, but that plaintiff could submit written interrogatories to him instead. On November 18, 2008, Magistrate Judge Smith entered an order finding defendant Christine Biondi's Motion to Quash Deposition Subpoena moot as "[n]o subpoena was ever issued or proposed here in order to secure Ms. Biondi's deposition testimony, nor is such issuance required under either the Federal Rules of Civil Procedure or the Rules of the United States District Court for the District of Connecticut" [Dkt. # 30]. Also on November 18, 2008, Magistrate Judge Smith entered an order denying Defendants' Motion to Quash Deposition Subpoena of Alejandro Rivera, noting that the rule under which Defendants filed, " 'Rule 26(3)(b)' . . . is not the proper Rule, nor is it even an actual Rule of Civil Procedure," and that defendants "failed to comply with Connecticut Local Rule 37(a), which requires a movant to certify that he or she has conferred with opposing counsel in an effort to resolve the discovery dispute without judicial intervention," and that "the defendants' summary statement that deposition of Mr. Rivera will elicit no relevant evidence does not meet their burden to prove that the testimony of a proposed deponent is not reasonably likely to lead to relevant, admissible evidence" [Dkt. # 31].

      The plaintiff filed this motion for sanctions on November 20, 2008. On January 21, 2009, the Court held a hearing on another issue in this case, at which time it gave the defendants

another week to comply with discovery. The Court held oral argument on the motion for sanctions on February 13, 2009; during the hearing, the Court warned the defendant that it was close to issuing sanctions in the form of a default judgment. The Court gave the defendants an additional two weeks to comply with discovery, and warned the defendants that even if they honestly and with reasonable diligence could not attain the information the plaintiff sought, they must still comply with the Federal Rules of Civil Procedure and provide explanations under oath. The Court held yet another hearing on the motion for sanctions on March 19, 2009, at which the plaintiff presented to the Court exhibits demonstrating the defendants' failure to comply with the Federal Rules, Judge Smith's Orders, and the Court's instructions.

## II.     Discussion

Rule 37 of the Federal Rules of Civil Procedure sets forth the Court's procedures for enforcing discovery and sanctioning misconduct, as follows:

> (b) Failure to Comply with a Court Order.
> . . .
> > (2) Sanctions in the District Where the Action Is Pending.
> > > (A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
> > > > (I) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> > > > (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> > > > (iii) striking pleadings in whole or in part;
> > > > (iv) staying further proceedings until the order is obeyed;
> > > > (v) dismissing the action or proceeding in whole or in part;
> > > > (vi) rendering a default judgment against the disobedient party; or

> . . .
> (c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.
>> (1) Failure to Disclose or Supplement.  If a party fails to provide information or identify a witness as required by Rule 26(a) or (e) [initial disclosures], . . . the court, on motion and after giving an opportunity to be heard:
>> . . .
>>> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Fed. R. Civ. P. 37(b)-(c).  Thus, "Provided that there is a clearly articulated order of the court requiring specified discovery, the district court has the authority to impose Rule 37(b) sanctions for noncompliance with that order."  Daval Steel Products v. M/V Fakredine, 951 F.2d 1357, 1363 (2d Cir. 1991).  "The imposition of sanctions under Rule 37 is within the discretion of the district court."  John B. Hull Inc. v. Waterbury Petroleum Products, Inc., 845 F.2d 1172, 1176 (2d Cir. 1988).

The defendants in this case have failed under Fed. R. Civ. P. 37(c) to provide initial disclosures; failed under Fed. R. Civ. P. 37(b) to comply with Magistrate Judge Smith's Order compelling initial disclosures, production of documents, and responses to interrogatories; failed to produce witnesses for depositions; failed to explain under oath the investigations undertaken and reasons for incomplete responses to the plaintiff's requests for production; and provided obviously incomplete and inaccurate information in response to interrogatories.  Therefore, the Court finds that sanctions are appropriate.

When considering what sanctions to impose, a district court should consider: "(1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the prejudice to the other party; (4) the duration of the period of noncompliance; and (5) whether the non-compliant party has been warned of the consequences

of his non-compliance." Handwerker v. AT&T Corp., 211 F.R.D. 203, 208 (S.D.N.Y. 2002). One possible sanction is rendering a default judgment against the disobedient party. Fed. R. Civ. P. 37(b)(2)(A)(vi). "Although entry of a default judgment is an extreme measure, discovery orders are meant to be followed. 'A party who flouts such orders does so at his peril.' " Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 853 (2d Cir. 1995) (quoting Update Art, Inc. v. Modiin Pub., Ltd., 843 F.2d 67, 73 (2d Cir. 1988)). Default judgment is proper if there is a showing of "willfulness, bad faith, or fault on the part of the sanctioned party." West v. Goodyear Tire and Rubber, 167 F.3d 776, 779 (2d Cir. 1999). The court may also impose "other appropriate sanctions" including "attorney's fees caused by the failure." Fed. R. Civ. P. 37(c)(1)(A).

      A.    <u>Willfulness and Reason for Non-Compliance</u>

"Non-compliance may be deemed willful 'when the court's orders have been clear, when the party has understood them, and when the party's non-compliance is not due to factors beyond the party's control.' " Abreu v. City of New York, 208 F.R.D. 526, 530 (S.D.N.Y. 2002). In addition, a "party's persistent refusal to comply with a discovery order presents sufficient evidence of wilfulness, bad faith or fault." Handwerker, 211 F.R.D. at 209.

Federal Rule of Civil Procedure 26 is clear in its requirement of initial disclosures. Moreover, Magistrate Judge Smith's orders regarding initial disclosures, requests for production, and interrogatories were clear. However, as of the plaintiff's filing of the motion for sanctions, Peter Biondi's first set of answers to interrogatories were the only written information the defendants had provided, as the defendants had not produced a single document relating to the case. Since the plaintiff's filing of the motion for sanctions, the Court has afforded the

defendants three more chances to come into compliance with discovery.  While the defendants have since provided the plaintiff with some discovery, they still have not provided complete responses or under oath explanations for incomplete responses, particularly regarding employees Morales worked with at Cancun Charlie's.

The Court finds that the defendants' insufficient compliance with Magistrate Judge Smith and this Court's clear orders regarding discovery constitute willfulness, and that the defendants have not demonstrated that their failure to comply is beyond their control.  Of course, "a party is not obliged to produce, at the risk of sanctions, documents that it does not possess or cannot obtain."  Shcherbakovskiy v. Da Capo Al Fine, Ltd., 490 F.3d 130, 138 (2d Cir. 2007).  However, the plaintiff cannot be forced to take the defendants at their word that they have attempted to but cannot obtain requested documents or that they cannot identify former employees, particularly as the defendants' explanations have changed throughout the months the plaintiff has attempted discovery.  The defendants are at least obligated to put in writing and under oath that the documents do not exist or the information is not discoverable.  Hansel v. Shell Oil Corp., 169 F.R.D. 303, 305 (E.D. Pa. 1996) ("If a party is unable to supply the requested information, the party may not simply refuse to answer, but must state under oath that he is unable to provide the information and set forth the efforts he used to obtain the information." (internal quotation marks omitted)).  Even after the Court's explicit warning in the February 13, 2009 hearing, the defendants failed to submit explanations under oath of their efforts and inability to obtain requested information and documents.

      B.      <u>The Efficacy of Lesser Sanctions to Effectuate the Goals of Rule 37</u>

Federal Rule of Civil Procedure 37(b)(2)(A) delineates a number of possible sanctions

that a court may impose for failure to comply with a discovery order.  Default judgment is the most extreme sanction authorized by Rule 37, and is appropriate only where no lesser sanction will effectuate the goals of Rule 37.  See Handwerker, 211 F.R.D. at 210.  Sanctions under Rule 37 effectuate three goals: "First, they ensure that a party will not benefit from its own failure to comply.  Second, they are specific deterrents and seek to obtain compliance with the particular order issued.  Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault." Update Art, 843 F.2d at 71.  The goals are analyzed in turn.

First, the defendants should not benefit from their own failure to comply with discovery.  Plaintiff's case appears to rely upon testimony of others who worked in the restaurant with Morales, but the defendants have refused to produce the names and contact information of those people, and further failed to produce documents that would help the plaintiff find those people.  The two people the defendants did produce for depositions – Ivonne Morris and Aja Smiley – worked in the front of the restaurant and therefore had little or no information about Morales.  The only person the plaintiff could identify as having worked in the kitchen – chef Alejandro Rivera – the defendants instructed not to attend his subpoenaed deposition.  Morris' testimony revealed the first names of several people who might have been able to testify about Morales' work, but the defendants have not provided the full names and contact information of those people.  If the Court imposes a sanction less than default judgment, it is unlikely the plaintiff could cobble together a case from the little information he has been able to discover, and therefore the defendants will have benefitted from their failure to comply.  Here, then, there is no less effective sanction where the defendants have withheld information within their control that

is necessary for the plaintiff to prove his case.  See, e.g., Bambu Sales, 58 F.3d at 853.

Second, a sanction short of default judgment will not ensure full compliance.  Rather, since the plaintiff filed the motion for sanctions, this Court has given the defendants three additional chances to comply, none of which have been successful.  There is no reason to believe that an additional chance will ensure compliance.

Third, a sanction short of default judgment will not have the appropriate general deterrent effect.  Rather, the Court must send a strong message that failing to comply with the Federal Rules and the Magistrate Judge's Orders, even after having been given several additional chances, will result in a harsh sanction.

C.   Prejudiced to Plaintiff from Failure to Comply with Discovery

As previously noted, the plaintiff has been prejudiced by the defendants' failure to comply with discovery because the withheld information is necessary for the plaintiff to prove his case.

D.   The Period of Non-Compliance

Defendants have been non-compliant since February 27, 2008, the deadline for initial disclosures.  Approximately a year and a half later, the defendants have not filed initial disclosures.  The defendants did not, despite Judge Smith's order on October 3, 2008, respond to the requests for production until January 27, 2009, after this Court gave them one more week for discovery.  The defendants have also still not provided sufficient responses to interrogatories.

E.   Notification of Potential Consequences of Non-compliance

The non-compliant litigant should be afforded some notice that his misconduct risks sanction under Rule 37.  See Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 764 (2d Cir.

1990).  Defendants have had more than sufficient notice of the potential consequences of non-compliance.  This motion for sanctions was filed in November, 2008.  At the February 13, 2009 hearing, the Court informed the defendants it was close to issuing sanctions in the form of a default judgment, and gave the defendants two more weeks to comply.  Nevertheless, the defendants had still not sufficiently complied by the March 19, 2009 hearing.

### III.   Conclusion

Accordingly, Morales' motion for sanctions [Dkt. # 32] is GRANTED, and default judgment is entered in favor of the plaintiff.  A hearing in damages will be scheduled.

**SO ORDERED.**
Dated this 30th day of October, 2009, at Hartford, Connecticut.


/s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**